UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №:  6:25-cv-2112

MATTHEW LAROSIERE,

*Plaintiff,*

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE        DISTRIBUTED,        DD
FOUNDATION        LLC,        THOMAS
CHRISTOPHER ODOM, AND GARRET
WALLIMAN,

*Defendants.*

_____/

## COMPLAINT

1.    This is an action for copyright infringement under the laws of the United States.

## BACKGROUND

2.    This action concerns infringing conduct by Defendants occurring after the commencement of *Larosiere v. Wilson et al.*, Case No. 6:24-cv-1629 (M.D. Fla.) (herinafter "the First Action"). The claims asserted here arise from distinct acts of infringement and parties not previously before the Court. No claim in this action duplicates or reasserts any cause of action pending in the prior matter.

3.    In the First Action, Plaintiff alleged that Cody Wilson and his affiliated entities committed extensive copyright infringement, false designation of

1

origin/unfair competition under the Lanham Act, and unauthorized use of Matthew Larosiere's name and likeness.

4.      The First Action alleged that Defendant Wilson, through his corporate alter egos, infringed some three-hundred-and-thirty distinct works of authorship.

5.      In response to the complaint in the First Action, Defendants filed a sprawling RICO counterclaim.

6.      Defendants ultimately abandoned their RICO counterclaim in the First Action, filing it again days later in the Southern District. *Defense Distributed v. Elik*, 9:25-cv-81197 (S.D., Fla) (herinafter "the Southern District Action").

7.      Defendants in the First Action, and the instant action, have reproduced *more* of Plaintiff's owned and copyrighted works without authorization since the pleadings have closed in the First Action, necessitating the instant action on the new infringements.

## PARTIES

**Plaintiff**

8.      Plaintiff Matthew Larosiere is a natural person, citizen and resident of the United States and the Great State of Florida, counties of Orange and Palm Beach. Plaintiff owns property and conducts business in Orange County, Florida. Plaintiff is a firearms industry attorney and author. Plaintiff engages in the design and development of firearms technologies, and produces pictorial, written, and visual art works related to his advocacy. Plaintiff is the exclusive owner of all works at issue in this litigation.

**Defendants, Generally & Alter Ago Allegations**

9.    Defendant Cody Rutledge Wilson (hereinafter "Defendant Wilson") established a web of corporations including Defendant Defcad, Inc., Defendant Defense Distributed, Inc., and DD Foundation LLC, (collectively, the "Business Entity Defendants") each of which is an alter ego of Defendant Wilson.

10.    Defendant Wilson exerts complete control of the Business Entity Defendants.

11.    Defendant Wilson owns at least 80% of each Business Entity Defendant.

12.    The collective operations of the Business Entity Defendants constitute a single business enterprise.

13.    Facts underlying the alter ego relationship specific to each of the Business Entity Defendants are pled below.

14.    Defcad Inc. and Defense Distributed have identical addresses, corporate directors, and owners, with the exception of DD Foundation LLC, which is identical to the other Business Entity Defendants in all material respects save for the address.

15.    According to information and belief, Defendant Wilson and his alter-ego corporate co-defendants are engaged in a corporate shell game designed to allow Defendant Wilson to dissipate assets and avoid judgments.

16.    This shell game has allowed Defendants to hide assets in multiple ways – including real estate holdings, cryptocurrencies, real monies, as well as tangible valuables. The shell game has diverted assets to the friends and family members of Defendant Wilson, who are on-again, off-again agents of the Business Entity

3

Defendants, and also the owners of registered addresses that Defendant Wilson's companies have used.

17.    Defendant Wilson has transferred the assets of the corporate co-defendants to third parties and to himself.

18.    Defendant Wilson has commingled his own assets with the assets of the corporate co-defendants, most frequently those of Defendant Defense Distributed, to support an extravagant lifestyle.

19.    On or about August 15, 2018, Defendant Wilson used a vehicle and other assets belonging to Defense Distributed for strictly personal matters.

20.    On or about August 16, 2018, Defendant Wilson emptied every cryptocurrency account connected to himself and the then-extant Business Entity Defendants into a single cryptocurrency account. (the "consolidating transfer").

21.    On or about August 31, 2018, Defendant Wilson transferred the contents of the consolidating transfer to another cryptocurrency account accessible to him for his own personal use.

22.    The 2018 consolidating transfer commingled all cryptocurrency assets of the then-existing Business Entity Defendants together with Defendant Wilson's personal assets.

23.    Defendant Wilson continues to commingle his own assets and money with that of the other assets from the Business Entity Defendants, chiefly Defense Distributed.

24.     According to information and belief, on April 19, 2024, Defendant Wilson contacted or caused to be contacted the email address of a retail business partly owned by Plaintiff using the pseudonym "Guard Denver."

25.     In the April 19 communication, "Guard Denver" referred to the copyright notice present in the Hitchhiker infringement.

26.     Over the course of several emails, "Guard Denver" requested Plaintiff "sign an engagement" with him.

27.     Plaintiff did not solicit any employment, nor sign any "engagement" with "Guard Denver."

28.     On or about June 12, 2024, Defendant Wilson sent or caused to be sent a package, through his company Defendant Defense Distributed, to Plaintiff's personal friend and employee, John Elik.[1]

29.     This package contained a death threat directed at Elik.

30.     The intent behind this threat Defendant Wilson sent or caused to be sent, through his company Defendant Defense Distributed, is clear: to use his companies to send death threats in the hopes of harassing and intimidating people who Defendant Wilson doesn't like.

---

[1] Some of the works at issue in the First Action were created as works-for-hire, where Plaintiff employed Elik to create the works. No such works are at issue here, but Defendant Wilson's use of his company to send a death threat helps illustrate the way in which Defendant Wilson uses his companies as alter egos to amplify his personal torts and give force to his personal animus.

31.    On or about August 9, 2024, Defendant Wilson filed a bar complaint ("the bar complaint") with the Florida Bar against Plaintiff Matthew Larosiere based on the "Guard Denver" communications.

32.    The bar complaint alleged that Plaintiff somehow violated Florida's attorney advertising rules when "Guard Denver" contacted Plaintiff.

33.    Defendant Wilson filed the bar complaint personally under his own name.

34.    In the bar complaint, Defendant Wilson, under penalty of perjury, referred to  Defcad.com as "my website[.]"

35.    In communications concerning the bar complaint, while under penalty of perjury, Defendant Wilson refers to Pablo Molina Diaz as "my employee."

36.    In the bar complaint, while under penalty of perjury, Defendant Wilson included an image showing a copyright notice from the Hitchhiker infringement.

37.    Following this, Defendant Wilson willfully continued the Hitchhiker infringement.

38.    On September 6, 2024, Plaintiff Larosiere filed the initial complaint in the First Action.

39.    On October 1, 2024, the bar complaint was resolved by the Florida Bar, finding that Plaintiff hadn't engaged in any misconduct.

40.    Based on information and belief, Defendant Wilson attempted to manufacture a bar violation so he could file the bar complaint to gain an improper advantage in the First Action, which he anticipated.

41.    On or about October 1, 2024, Defendant Wilson sent a typewritten letter to "Will Becker" ("the October 1 letter").

42.    In the October 1 letter, Defendant Wilson wrote "to formally demand the return of $5,570, which Defense Distributed paid" for contract work.

43.    The October 1 letter claims that "Will Becker" was a former contract employee of Defense Distributed, and that the repayment was owed due to unsatisfactory work performed as far back as 2023.

44.    The October 1 letter did not use Defense Distributed letterhead, nor did it identify Defendant Wilson as an agent of Defense Distributed, but instead was on Defendant Wilson's personal letterhead.

45.    The October 1 letter threatens "Will Becker" with "an amusing array of legal methods" in the event that "I [Defendant Wilson] do not receive the refund".

46.    The October 1 letter concludes "P.S. Matt isn't authorized to practice law in Arizona. I can remind him of this for you if you like."

47.    According to information and belief, "Matt" is a reference to Plaintiff.

48.    The October 1 letter was intended to give Defendant Wilson an improper advantage in this litigation by harassing a personal friend of Plaintiff.

49.    On or about November 1, 2024, Defendant Wilson sent another letter to "Will Becker" ("the second letter").

50.    This second letter demanded a payment of some $7,570 dollars to Defendant Wilson personally.

51.    This second letter did not use Defense Distributed letterhead, nor identify Defendant Wilson as an agent of Defense Distributed, but rather was on Defendant Wilson's personal letterhead.

52.    The improper use of the corporate forms on the part of Defendant Wilson in his use of the Business Entity Defendants have damaged and are designed to damage Plaintiff in numerous ways, including but not limited to lost revenue from infringing activities, enabling Defendant Wilson to personally use the corporate forms to amplify his personal torts against Plaintiff, to shield assets from Plaintiff's inevitable recovery, and to harass Plaintiff's personal friends.

**Defendant Defcad**

53.    Defendant Defcad, Inc. ("Defcad") is a corporation organized and existing under the laws of the State of Delaware, with concomitant registrations in the states of Arkansas, and most recently, Texas.

54.    Defendant Defcad, Inc. has admitted in the Southern District Action's complaint to "sharing profits" with the other Business Entity Defendants.

55.    Defcad is the alter ego of Defendant Wilson, because Defendant Wilson exerts complete control of it, and is its sole director and owner.

56.    Defcad does not have a registered agent listed with the Delaware Secretary of State. Defendant Defcad may be served by serving its alter ego, Defendant Wilson.

57.    Defcad's Arkansas registration lists a Principal Address of 2320 Donley Drive, Ste C, Austin, TX 78758. Its officers are Defendant Wilson, as President, and Morgan Noble as Incorporator.

58.    Defcad's Texas registration lists a mailing address of 2320 Donley Dr, Stc C, Austin TX 78758, and lists Defendant DEFENSE DISTRIBUTED as Registered Agent, with the same Donley Dr. Address.

59.    Defcad's Texas registration lists Defendant Wilson as Director, listing Defendant Wilson's address as 4610 Crestway Drive, Austin, TX 78731.

60.    Defendant Defcad is the owner and operator of the website Defcad.com. This website hosts and distributes downloadable three-dimensional models of various firearms and firearms accessories, plus documentation and photographs relating to the downloadable models.

61.    To access the files, Defcad requires prospective downloaders to purchase a subscription through DDLegio.com—itself proclaiming to be "Defense Distributed's technical and legal support fraternity," owned by Defendant Defense Distributed.[2]

62.    Defcad also publishes and maintains a blog at https://defcad.com/blog/. ("the Defcad blog").

63.    Defendant Wilson frequently posts updates or causes updates to be posted to the Defcad blog. Many of these blog posts advertise the copyright infringement that is carried out at Defcad.com.

---

[2] Defendants' DDLegio website states "LEGIO membership is the only method for accessing DEFCAD, the world's largest 3D gun file repository, archive and search engine. Join us." https://ddlegio.com/join/ , archived at: https://archive.ph/8MVjh .

64. Defendant Wilson is the only director, officer, or executive, of Defcad.

**Defendant Defense Distributed**

65. Defendant Defense Distributed is incorporated as a nonprofit in the State of Texas, with a mailing and registered address of 2320 Donley Dr, Ste C, Austin, TX 78758.

66. Defendant Defense Distributed has admitted in the Southern District Action's complaint to "sharing profits" with the other Business Entity Defendants.

67. Defense Distributed is the alter ego of Defendant Wilson, because Defendant Wilson exerts complete control of it, and is its sole director and owner.

68. Defendant Wilson is listed as Defense Distributed's registered agent, Director, and Governing Member.

69. Defense Distributed does business as "Ghostguns.com," "Legio," "DDLegio," and "Ghost Gunner."

70. Defense Distributed extracts revenues from Legio Memberships, which it markets as a way to gain access to downloads from Defcad.com. Among these downloads are the copyrighted works which belong to Plaintiff.

71. Defense Distributed also publishes and maintains a blog at https://ddlegio.com/blog ("the DDLegio blog").

72. The posts on the DDLegio blog are written and/or curated by Defendant Wilson.

73. Defendant Wilson is the only director, officer, or executive, of Defense Distributed.

74.    Defense Distributed has accepted payment by cryptocurrency since around 2013.

75.    Defendant Wilson has diverted many of the proceeds from these cryptocurrency payments to himself.

**Defendant DD Foundation LLC**

76.    Defendant DD Foundation LLC is incorporated in the State of Texas, with a mailing address of 5900 Balcones Drive, STE. 100, Austin, TX, 78731, USA.

77.    DD Foundation LLC's registered agent is listed as "Registered Agents, Inc," with a registered office street address of 5900 Balcones Drive, STE. 100, Austin, TX, 78731, USA.

78.    Defendant DD Foundation LLC has admitted in the Southern District Action's complaint to "sharing profits" with the other Business Entity Defendants.

79.    DD Foundation LLC is the alter ego of Defendant Wilson, because Defendant Wilson exerts complete control of it, and is its sole director and owner.

80.    DD Foundation LLC previously listed Defendant Wilson's father, Dennis K. Wilson, as an officer.

81.    Following the filing of the First Action, Defendant Wilson removed his father from DD Foundation LLC.

82.    The purpose of removing his father from DD Foundation LLC was at least in part an attempt to shield assets that were diverted to his father from recovery.

11

83.    Combined with DD Foundation LLC's admission that it shares profits with the other Business Entity Defendants, the timing of the corporate restructuring suggests a transparent attempt to try and frustrate recovery and obfuscate aspects of Defendants' conduct.

**Defendant Cody Rutledge Wilson**

84.    Defendant Wilson is a natural person who resides in Austin, Texas.

85.    Defendant Wilson has primary control and command of Defense Distributed.

86.    Defendant Wilson is the director and governing member of Defense Distributed, and by extension Defense Distributed's subsidiaries.

87.    Defendant Wilson has primary control and command of Defcad, Inc.

88.    Defendant Wilson has primary control and command of DD Foundation LLC.

89.    At all times material to this complaint, Defendant Wilson either personally performed, directed, or was aware of the complained-of conduct.

90.    In the alternative, Defendant Wilson directed Defendants Walliman and Odom (all 3 together, "the Individual Defendants"), to infringe Plaintiff's copyrighted works.

**A Note on Defendants Odom and Walliman**

91.    During the First Action, Defendants have attempted to obfuscate or confuse liability by vaguely alluding to the actions of Odom and Walliman, employees of Defendant Wilson.

92.    It is Plaintiff's firm belief that Defendants Odom and Walliman were acting at Defendant Wilson's direction and coercion. However, Defendant Wilson has indicated that Defendants Odom and Walliman were acting of their own volition, and that each had a knowing role to play in the copyright infringement.

93.    In light of this, in the alternative to the infringements pled herein being done at the specific direction of Defendant Wilson, Plaintiff pleads liability alternatively as to Odom and Walliman specifically as follows.

**Defendant Thomas Christopher Odom**

94.    Defendant Odom is a natural person who resides in Kingsbury, Texas.

95.    Defendant Odom is an employee, contractor, or business partner of Defendant Wilson through at least one of the Business Entity Defendants.

96.    Defendant Odom's duties include reviewing, analyzing, and preparing each work available for download on Defcad.com.

97.    As a part of these duties, Defendant Odom was responsible for ensuring that materials subject to copyright protection were not made available on Defcad.com.

98.    Defendant Odom had seen and was personally aware of the copyright notices present in Plaintiff's works, which are the subject of the instant action.

99.    Defendant Odom proceeded to make these works available at Defcad.com despite knowing that he would be infringing Plaintiff's copyrights in doing so.

100.    Defendant Odom was aware that what he was doing was, in fact, copyright infringement.

101. Defendant Odom personally indicated on Defcad.com that the works he was copying were subject to copyright, with all rights reserved.

102. Defendant Odom made the works available for download on Defcad.com anyway, abdicating his duty to prevent copyright infringement by Defcad.com.

103. Defendant Odom willfully infringed Plaintiff's copyrights.

104. Defendant Odom infringed Plaintiff's copyrights for his own pecuniary gain or to curry favor with Defendant Wilson.

**Defendant Garret Walliman**

105. Defendant Walliman is a natural person who resides in Apache Junction, Arizona.

106. Defendant Walliman is an employee, contractor, or business partner of Defendant Wilson through at least one of the Business Entity Defendants.

107. Defendant Walliman's duties include reviewing, analyzing, and preparing each work that is available for download on Defcad.com.

108. As a part of these duties, Defendant Walliman was responsible for ensuring that materials subject to copyright protection were not made available on Defcad.com.

109. Defendant Walliman had discovered and was personally aware of the copyright notices present in Plaintiff's works, which are the subject of the instant action.

110.    Defendant Walliman proceeded to make these works available at Defcad.com despite knowing that he would be infringing Defendant's copyrights in doing so.

111.    Defendant Walliman was aware what he was doing was, in fact, copyright infringement.

112.    Defendant Walliman personally indicated on Defcad.com that the works he was copying and distributing were subject to copyright, with all rights reserved.

113.    Defendant Walliman made the works available for download on Defcad.com anyway, abdicating his duty to prevent copyright infringement by Defcad.com.

114.    Defendant Walliman created a website, "fedcad.com", which documents the copyright protected works that Defcad.com is engaged in the infringement of.

115.    Through this website, Defendant Walliman makes it clear that he is aware of the infringement which he is responsible for stopping, yet he continues to perform.

116.    In private communications, Defendant Walliman has expressed frustration with the fact that Plaintiff's works are subject to copyright protections.

117.    Defendant Walliman willfully infringed Plaintiff's copyrights.

118.    Defendant Walliman infringed Plaintiff's copyrights for his own pecuniary gain or to curry favor with Defendant Wilson.

## JURISDICTION

119.    This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101, *et. seq.* and 28 U.S.C. §§1331 and 1338(a).

120.    This Court has personal jurisdiction over Defendants.

**Personal Jurisdiction – Defendant Defcad**

121.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Defcad is subject to general personal jurisdiction in the Middle District of Florida because it is engaged in substantial and not isolated activity in Florida, namely advertising and selling works such as the infringing works to the State of Florida.

122.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Defcad is subject to specific personal jurisdiction in the Middle District of Florida because it committed a tortious act within the State of Florida, including but not limited to the distribution and sale of Plaintiff's copyrighted works on its website, which could be and were accessed by Floridians, including Plaintiff.

**Personal Jurisdiction – Defendant Defense Distributed**

123.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Defense Distributed is subject to general personal jurisdiction in the Middle District of Florida because it is engaged in substantial activity in Florida, including but not limited to advertising, selling, and delivering works such as the infringing works to the State of Florida.

16

124.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Defense Distributed is subject to specific personal jurisdiction in the Middle District of Florida because it committed tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on its website, which could be and were accessed by Floridians, including Plaintiff.

125.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Defense Distributed is subject to specific personal jurisdiction in the Middle District of Florida because it committed tortious acts in Florida, including but not limited to the sale of copies of Plaintiff's works, which could be and were purchased by Floridians, including by Plaintiff.

**Personal Jurisdiction   DD Foundation LLC**

126.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6), and (1)(a)(6)(b), Fla. Stat., Defendant DD Foundation LLC is subject to general personal jurisdiction in the Middle District of Florida because it is engaged in substantial activity in Florida, including but not limited to advertising, selling, and delivering works such as the infringing works to the state of Florida.

127.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant DD Foundation LLC is subject to specific personal jurisdiction in the Middle District of Florida because it committed or was involved in the commission of tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on its website, which could be and were accessed by Floridians, including Plaintiff.

128.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant DD Foundation LLC is subject to specific personal jurisdiction in the Middle District of Florida because it committed tortious acts in Florida, including but not limited to the sale of copies of Plaintiff's works, which could be and were purchased by Floridians, including by Plaintiff.

**Personal Jurisdiction – Defendant Wilson**

129.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Wilson is subject to specific personal jurisdiction in the Middle District of Florida because he committed tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on his websites, by his companies, which he directs, which could be and were accessed by Floridians, including Plaintiff.

130.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Wilson is subject to specific personal jurisdiction in the Middle District of Florida because he directed the jurisdictionally relevant acts of the Business Entity co-Defendants, and otherwise because Defcad and Defense Distributed are at a minimum his alter egos.

131.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Wilson is subject to general jurisdiction in the Great State of Florida because the Business Entity Defendants are his alter egos, and is thus subject to general jurisdiction on the same grounds as any of the Business Entity Defendants.

**Personal Jurisdiction – Defendant Odom**

132.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Odom is subject to specific personal jurisdiction in the Middle District of Florida because he committed tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on Defcad.com, which could be and were accessed by Floridians, including Plaintiff.

133.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Odom  is subject to specific personal jurisdiction in the Middle District of Florida because he directed at least some of the jurisdictionally relevant acts of the Business Entity co-Defendants.

**Personal Jurisdiction – Defendant Walliman**

134.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Walliman is subject to specific personal jurisdiction in the Middle District of Florida because he committed tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on Defcad.com, which could be and were accessed by Floridians, including Plaintiff.

135.    Pursuant to §§ 48.193(1)(a)(1), (1)(a)(6)(a), and (1)(a)(6)(b), Fla. Stat., Defendant Odom  is subject to specific personal jurisdiction in the Middle District of Florida because he directed at least some of the jurisdictionally relevant acts of the Business Entity co-Defendants.

<u>**VENUE**</u>

136.    Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

137.   Defendant Wilson founded Defense Distributed in October of 2012.

138.   Defcad was founded in March of 2013.

139.   Around March of 2020, Defcad began to invite authors to upload their works to its site.

140.   In addition, Defcad began to download works it came across on the Internet and redistribute them on Defcad.com without authorization.

141.   Around March of 2020, Defcad began to require prospective downloaders to first purchase a membership from ddlegio.com. (a "Legio membership").

142.   The price of a Legio membership has varied, but typically costs about 60 Dollars per year.

143.   Defendant Defcad posts announcements and news concerning their operations on its blog. It also sends announcements and news out through email blasts.

144.   Through these blog posts and email blasts, Defendant Defcad has boasted about their unpermitted copying of Plaintiff's copyrighted works.[3]

---

[3]  *See* https://defcad.com/blog/pwc9-projectile-dysfunction-halloween/ , specifically "...FreedomeWare really outdid himself with The Micro Hiker. Based on The HitchHiker by Fudd Busters, this is a miniaturization and simplification of that prior single shot design. This particular project was a favor to Hoffman Tactical and is hailed for being able to fit inside a 30 caliber ammo can. Good thing the Hitchhiker files have a public license." Yet no such "public license" exists.

*See also* https://defcad.com/blog/mk18-g80/ , specifically "they call their project the The Regular 10/22. While the Ruger 10/22 design may be one of the most widely-used and repeated designs in our space, The Regular is another. Perhaps it pretends to

145. Some of these posts have acknowledged that publishing the works Plaintiff's owns is an act subject to copyright law.

146. These posts are authored in whole or in part by Defendant Wilson.

147. These posts are authored in whole or in part by Defendant Walliman.

148. These posts are authored in whole or in part by Defendant Odom.

149. Defendant Defcad operates by having Defendant Odom and/or Defendant Walliman make files available for download on Defcad.com only after Defendant Odom and/or Defendant Walliman completes a thorough initial review and preparation for each downloadable file, and after a final review by Odom, Walliman, or Wilson.

150. Defendant Defcad's final review process includes an administrator (usually Defendant Odom or Defendant Walliman, but sometimes Defendant Wilson) updating the web pages hosting the works to associate a "creator" with the file – which gives the appearance of the files having been made available on Defcad.com by their putative "creator", when in reality these files were made available by Defcad's own personnel *after* Defcad personnel's independent review and preparation.

151. Defendant Wilson has the ability to remove files from download pages in order to stop copyright infringement.

---

some original and artistic difference protectable by law. But you don't have to pretend, homie. It's ok to be regular." Here, the clear message indicates that they are aware of the copyright notices contained in the works they infringed, but are flagrantly disregarding them, choosing to make a mockery of the law instead. Archived at: https://archive.ph/FUTxj .

152. Defendant Walliman has the ability to remove files from download pages in order to stop copyright infringement.

153. Defendant Odom has the ability to remove files from download pages in order to stop copyright infringement.

## FACTS COMMON TO ALL CLAIMS OF INFRINGEMENT (CHRONOLOGICAL)

154. Each named infringement below, unless otherwise specified, consists of the unauthorized reproduction and distribution of one of Plaintiff's owned and copyrighted works.

155. For each of the works at issue in this matter, Plaintiff holds a copyright registration certificate.

156. Plaintiff owns complete, exclusive rights to the works registered in TX0009509700, TX0009509692, VA0002449545, VA0002449526, and VA0002449520.

157. Plaintiff acquired the rights to these works through written agreement with their original authors.

158. The assignment of rights from their original authors to Plaintiff for the works took place on April 14, 2025.

159.    On or about April 28, 2025, Defendant Wilson, in whole or in part, uploaded or caused the uploading of "The Regular 1022" to Defcad.com.[4] ("the 1022 Infringement").

160.    On or about April 28, 2025, Defendant Walliman, in whole or in part, uploaded or caused the uploading of the 1022 Infringement.

161.    On or about April 28, 2025, Defendant Odom, in whole or in part, uploaded or caused the uploading of the 1022 Infringement.

162.    The 1022 Infringement contains exact, unauthorized reproductions of twenty-three of Plaintiff's registered photographic visual arts works that depict a firearm known as the Regular 1022, and which have United States Copyright Office (USCO) registration numbers of VA0002449545, VA0002449526, and VA0002449520.

163.    The 1022 Infringement contains an exact, unauthorized reproduction of one of Plaintiff's registered literary works, written documentation concerning a firearm known as the Regular 1022, which has a USCO registration number of TX0009509700.

164.    The 1022 Infringement contains an exact, unauthorized reproduction of one of Plaintiff's registered literary works, a README file concerning a firearm known as the Regular 1022, which has a USCO registration number of TX0009509692.

---

[4]    https://defcad.com/library/the-regular-1022/    ,    archived    at: https://web.archive.org/web/20251101185118/https://defcad.com/library/the-regular-1022/

165.    Plaintiff discovered the 1022 Infringement on May 1, 2025.

166.    On or about May 1, 2025, from a computer located in Orange County, Florida, Plaintiff accessed Defendant's Defcad website and downloaded the 1022 Infringement.

167.    Plaintiff confirmed that these twenty-three of the registered photographs he owned were being copied by Defendants. Plaintiff further confirmed these two of the literary works he owns were being copied by Defendants.

168.    The registered works copied by Defendants in the 1022 Infringement contained hidden watermarks and/or other unique features which are present in the files downloaded from Defendant Defcad.

169.    Plaintiff filed the registrations for these works on May 3, 2025, only five days after Defendant's first infringement, two days after Plaintiff discovered the infringement, and under a month from the first publication of all but six of the works.[5]

170.    On or about May 4, 2025, Plaintiff notified Defendants in the First Action that the 1022 Infringement existed, and that the infringement was ongoing.

171.    Defendants Wilson, Defense Distributed, and Defcad were aware of the 1022 Infringement from at least this date.

172.    On or about May 4, 2025, Defendant Walliman updated his fedcad.com website to reflect the fact that Defcad.com was infringing on the copyrights applicable to the 1022 Infringement.

---

[5] Six of these twenty-three photographs (each of which are registered under VA0002449526) were originally published in 2020.

24

173. On or about May 4, 2025, Defendant Walliman's updated to his fedcad.com website reflected that the registrations relevant to the 1022 Infringement were pending.

174. These updates clearly indicate that the Defendants were aware of the infringement, yet they took no action and made no attempt to cure their infringement.

175. On or about May 5, 2025, the blog on Defcad.com was updated to advertise the fact that the 1022 Infringement was available for download.

176. On June 13, 2025, Plaintiff received the final registration certificates for the works infringed in the 1022 Infringement.

177. On or about October 17, 2025, Defendant Wilson, in whole or in part, uploaded or caused the uploading of "the Micro Hiker" to Defcad.com.[6] ("the Second Hitchhiker Infringement").

178. On or about October 17, 2025, Defendant Walliman, in whole or in part, uploaded or caused to be uploaded the Second Hitchhiker Infringement to Defcad.com.

179. On or about October 17, 2025, Defendant Odom, in whole or in part, uploaded or caused to be uploaded the Second Hitchhiker Infringement to Defcad.com.

180. The Second Hitchhiker Infringement contains an exact, unauthorized reproduction of one of Plaintiff's registered literary works, written documentation

---

[6]    https://defcad.com/library/the-micro-hiker/        ,        archived        at: https://web.archive.org/web/20251101200718/https://defcad.com/library/the-micro-hiker/

concerning a firearm known as the Hitchhiker, which has a USCO registration number of TX0009412695.

181.   TX0009412695 was registered with the USCO effective July 10, 2024 – the same date the work in question was published.

182.   Defendants are being sued for infringing TX0009412695 in the First Action. However, the Second Hitchhiker Infringement is a temporally and factually separate infringement of that work.

183.   The Second Hitchhiker Infringement contains exact, unauthorized reproductions of sixty-three of Plaintiff's registered photographic visual arts works that depict a firearm known as the Hitchhiker, and which have a United States Copyright Office (USCO) registration number of VA0002418589.

184.   VA0002418589 was registered with the USCO effective July 10, 2024 the same date the work in question was published.

185.   Defendants are already being sued for infringing VA0002418589 in the First Action, however, the Second Hitchhiker Infringement is a temporally and factually separate infringement of that work.

186.   Defcad required a paid Legio membership to download the Second Hitchhiker Infringement.

187.   The download page on Defcad.com for "the Micro Hiker" listed "FreedomWare" as the individual who had made "the Micro Hiker" available on Defcad.com.

188.    "FreedomWare" is an anonymous designer who uses "FreedomWare" as their screen name.

189.    "FreedomWare" did not upload or cause to be uploaded "the Micro Hiker" to Defcad.com.

190.    Instead, it was Defendants Wilson who, in whole or in part, made "the Micro Hiker" available on Defcad.com.

191.    Instead, it was Defendant Walliman who, in whole or in part, made "the Micro Hiker" available on Defcad.com.

192.    Instead, it was Defendant Odom who, in whole or in part, made "the Micro Hiker" available on Defcad.com.

193.    Defendants hoped that they could copy the work themselves and then pin the blame for their copyright infringement on "FreedomWare", such that Defendants might escape the consequences of their copyright infringement.

194.    Plaintiff holds several copyright registrations related to "the Hitchhiker", which Defendants are all well aware of.[7]

---

[7] The First Action names Defendants Defcad, Defense Distributed, and Cody Wilson as having infringed on TX0009412695 and VA0002418589 previously. In the First Action, Defendant Wilson swears that Defendant Odom reviewed and prepared the original Hitchhiker Infringement and additionally indicated that Defendant Odom would have been responsible for the Second Hitchhiker Infringement. Defendant Walliman updated his fedcad.com website to reflect the fact that he was aware of the TX0009412695 registration, and that Defcad.com was infringing it. Defendant Wilson indicated in discovery in the First Action that he was aware of the contents of fedcad.com, and as such, the Individual Defendants all knew or should have known that the Second Hitchhiker Infringement was, in fact, an infringement.

195. Plaintiff was not immediately aware of the Second Hitchhiker Infringement because Defendant Wilson, in whole or in part, added a provision to Defcad's terms of service to attempt to prevent Plaintiff from accessing Defcad's website. This was done to frustrate Plaintiff's attempts to gain proof of Defendants' copying.[8]

196. Defendant Walliman, in whole or in part, added a provision to Defcad's terms of service to attempt to prevent Plaintiff from accessing Defcad's website. This was done to frustrate Plaintiff's attempts to gain proof of Defendants' copying.

197. Defendant Odom, in whole or in part, added a provision to Defcad's terms of service to attempt to prevent Plaintiff from accessing Defcad's website. This was done to frustrate Plaintiff's attempts to gain proof of Defendants' copying.

198. Though the First Action is still pending, the pleadings therein are closed, and thus Plaintiff's hand was forced on October 31, 2025.

199. On October 31, 2025, Defendant Wilson sent out or caused the sending of an email blast advertisement to Defendant Defcad's email subscriber list.

200. The contents of the October 31, 2025 email blast was also posted on the Defcad blog.[9]

---

[8] Plaintiff strongly disagrees with the validity of the argument in question, as it is unsupportable to suggest that a website engaged in willful copyright infringement could invoke a provision in its terms of service to prevent rightsholders from proving the ongoing nature of the infringement, but Defendants have invoked the CFAA no less than three times when it was suggested Plaintiff viewed their website.

[9] https://defcad.com/blog/pwc9-projectile-dysfunction-halloween/, archived at https://web.archive.org/web/20251101195402/https://defcad.com/blog/pwc9-projectile-dysfunction-halloween/.

201.    The email and blog post both advertised that a design known as "the Micro Hiker" was available for download on Defcad.com.

202.    The email and blog post both indicate that "the Micro Hiker" is related to "the Hitchhiker." Plaintiff owns various copyrighted works associated with "the Hitchhiker."

203.    The email and blog post both indicate that "the Hitchhiker" is subject to some sort of unspecified "public license."[10] This is untrue.

204.    In the First Action, Defendant Wilson was asked to produce all licenses that he believes would have allowed him to copy the works registered as TX0009412695 and VA0002418589. Defendant Wilson failed to provide any such license.

205.    By falsely indicating that "the Hitchhiker" is subject to some unspecified "public license[,]" Defendants have engaged in contributory copyright infringement by misleading all recipients of their email and all viewers of their blog into the belief that such an unspecified license somehow exists.

206.    Defendants know no such license exists, as they failed to produce such a license when required to in the First Action.

207.    Plaintiff was sent the contents of the email blast and blog post in the early hours of November 1, 2025, making Plaintiff aware of the possibility that Defendants were violating another of his copyrights.

---

[10] Yet, on Defcad.com's download page for "the Micro Hiker", the "Licence" section clearly states that the works are "Copyrighted, All Rights Reserved".

208. Plaintiff was also sent the contents of "the Micro Hiker" download from Defcad.com in the early hours of November 1, 2025, which were downloaded from a computer in Orange County, FL.

209. Plaintiff carefully inspected the contents of "the Micro Hiker" download. In it, Plaintiff discovered that Defendants were violating yet another one of his copyrights.

210. Specifically, Plaintiff discovered that "the Micro Hiker" download included a complete copy of the works registered under TX0009412695, as well as copies of all sixty-three photographs registered under VA0002418589.

211. On January 22, 2025, Defendant Wilson swore that "From January 25, 2025, until the conclusion of this litigation, Defense Distributed and Defcad will employ a policy of not distributing via Defcad or otherwise intentionally utilizing the photographs and literary works [concerning several of Plaintiff's works, including the Hitchhiker works] This policy is undertaken voluntarily, absolutely, and without qualification." *Larosiere v. Wilson*, 6:24-cv-01629 (Doc. 74-1 p.3).

212. To make absolutely sure that the new, separate infringement was taking place, on November 1, 2025, from a computer located in Orange County, Florida, Plaintiff accessed Defendant's Defcad website and downloaded the Second Hitchhiker Infringement.

213. Plaintiff confirmed that sixty-three of the registered photographs he owned were being copied by Defendants. Plaintiff further confirmed that one literary work which Plaintiff owns was being copied by Defendants.

30

214.    The registered works copied by Defendants in the Second Hitchhiker Infringement contained hidden watermarks and/or other unique features which are present in the files downloaded from Defcad.

215.    The works registered under TX0009412695, VA0002418589, VA0002449545, VA0002449520, TX0009509700, and TX0009509692 contain or are subject to a copyright notice which clearly forbids their redistribution via Defcad.com, which Defendant Defense Distributed is aware of.

216.    The works registered under TX0009412695, VA0002418589, VA0002449545, VA0002449520, TX0009509700, and TX0009509692 contain or are subject to a copyright notice which clearly forbids their redistribution via Defcad.com, which Defendant Defcad is aware of.

217.    The works registered under TX0009412695, VA0002418589, VA0002449545, VA0002449520, TX0009509700, and TX0009509692 contain or are subject to a copyright notice which clearly forbids their redistribution via Defcad.com, which Defendant DD Foundation LLC is aware of.

218.    The works registered under TX0009412695, VA0002418589, VA0002449545, VA0002449520, TX0009509700, and TX0009509692 contain or are subject to a copyright notice which clearly forbids their redistribution via Defcad.com, which Defendant Wilson is aware of.

219.    The works registered under TX0009412695, VA0002418589, VA0002449545, VA0002449520, TX0009509700, and TX0009509692 contain or are

subject to a copyright notice which clearly forbids their redistribution via Defcad.com, which Defendant Odom is aware of.

220. The works registered under TX0009412695, VA0002418589, VA0002449545, VA0002449520, TX0009509700, and TX0009509692 contain or are subject to a copyright notice which clearly forbids their redistribution via Defcad.com, which Defendant Walliman is aware of.

221. Despite the Individual Defendants having responsibilities to prevent copyright infringement by Defcad.com, each of them instead demonstrated their awareness of the infringement, both before and after their distributing it on Defcad.com, and took no steps to stop it after they either initiated it or became aware of it.

222. Despite the Business Entity Defendants having responsibilities to prevent copyright infringement by Defcad.com, each of them, by their own admission, instead shared profits resulting from Defendant Defcad's copyright infringement.

223. Defendants Wilson, Odom, Walliman, Defcad, Defense Distributed, and DD Foundation LLC have continued to reproduce and distribute the 1022 Infringement, including all registered works therein, up to and including the present day.

224. Defendants Wilson, Odom, Walliman, Defcad, Defense Distributed, and DD Foundation LLC have continued to reproduce and distribute the Second Hitchhiker Infringement, including all registered works therein, up to and including the present day.

225.    The Individual Defendants have conspired together to each have a hand in the willful infringement of Plaintiff's copyrights.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501

226.    Plaintiff repeats and re-alleges all paragraphs concerning the individual and Business Entity Defendants' copying of Plaintiff's registered works, as if fully set forth herein.

227.    At all times relevant hereto, Plaintiff has been the owner of the photographic, visual, and textual works reproduced, distributed, sold, offered for sale, and publicly displayed by Defendants. Plaintiff published each work prior to Defendants' infringing activity.

228.    For each of the works cited in this cause of action, Plaintiff holds a copyright registration certificate from the United States Copyright Office.

## COUNT 1: COPYRIGHT INFRINGMENT AS TO DEFENDANT DEFCAD

229.    Without authorization, Defendant Defcad, Inc., reproduced and distributed the following Plaintiff-owned and copyrighted works:

      a.    From at least April 28, 2025, and continuing to the present day, twenty-three (23) photographic visual art works that depict a firearm known as the Regular 1022, and which are registered under VA0002449545, VA0002449526, and VA0002449520.

      b.    From at least April 28, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Regular 1022) registered under TX0009509700.

c.  From at least April 28, 2025, and continuing to the present day, a literary work (written "README" concerning a firearm known as the Regular 1022) registered under TX0009509692.

d.  From at least October 17, 2025, and continuing to the present day, sixty-three (63) photographic visual art works that depict a firearm known as the Hitchhiker, and which are registered under VA0002418589.

e.  From at least October 17, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Hitchhiker) registered under TX0009412695.

230.  Plaintiff did not authorize Defendant Defcad's copying, display, or distribution of Plaintiff's works.

231.  As a result of its wrongful conduct, Defendant Defcad is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

232.  Plaintiff is entitled to recover damages including any and all profits Defendant has made as a result of its wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

COUNT 2: COPYRIGHT INFRINGEMENT AS TO DEFENDANT DEFENSE DISTRIBUTED

233.  Without authorization, Defendant Defense Distributed reproduced and distributed the following Plaintiff-owned and copyrighted works:

a. From at least April 28, 2025, and continuing to the present day, twenty-three (23) photographic visual art works that depict a firearm known as the Regular 1022, and which are registered under VA0002449545, VA0002449526, and VA0002449520.

b. From at least April 28, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Regular 1022) registered under TX0009509700.

c. From at least April 28, 2025, and continuing to the present day, a literary work (written "README" concerning a firearm known as the Regular 1022) registered under TX0009509692.

d. From at least October 17, 2025, and continuing to the present day, sixty-three (63) photographic visual art works that depict a firearm known as the Hitchhiker, and which are registered under VA0002418589.

e. From at least October 17, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Hitchhiker) registered under TX0009412695.

234. Plaintiff did not authorize Defendant Defense Distributed's copying, display, or distribution of Plaintiff's works.

235. As a result of its wrongful conduct, Defendant Defense Distributed is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff

has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

236.    Plaintiff is entitled to recover damages including any and all profits Defendant Defense Distributed has made as a result of its wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

## COUNT 3: COPYRIGHT INFRINGEMENT AS TO DEFENDANT DD Foundation LLC

237.    According to information and belief, without authorization, Defendant DD Foundation LLC took part in and shared in the profits from the reproduction and distribution of the following Plaintiff-owned and copyrighted works:

   a. From at least April 28, 2025, and continuing to the present day, twenty-three (23) photographic visual art works that depict a firearm known as the Regular 1022, and which are registered under VA0002449545, VA0002449526, and VA0002449520.

   b. From at least April 28, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Regular 1022) registered under TX0009509700.

   c. From at least April 28, 2025, and continuing to the present day, a literary work (written "README" concerning a firearm known as the Regular 1022) registered under TX0009509692.

   d. From at least October 17, 2025, and continuing to the present day, sixty-three (63) photographic visual art works that depict a firearm

known as the Hitchhiker, and which are registered under VA0002418589.

e. From at least October 17, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Hitchhiker) registered under TX0009412695.

238.   Plaintiff did not authorize Defendant DD Foundation LLC's copying, display, or distribution of Plaintiff's works.

239.   As a result of its wrongful conduct, Defendant DD Foundation LLC is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

240.   Plaintiff is entitled to recover damages including any and all profits Defendant DD Foundation LLC has made as a result of its wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

COUNT 4: COPYRIGHT INFRINGEMENT AS TO DEFENDANT WILSON

241.   Without authorization, Defendant Wilson, himself and through his alter ego business entities, reproduced and distributed, or caused to be reproduced and distributed, the following Plaintiff-owned and copyrighted works:

a. From at least April 28, 2025, and continuing to the present day, twenty-three (23) photographic visual art works that depict a firearm known as the Regular 1022, and which are registered under VA0002449545, VA0002449526, and VA0002449520.

b. From at least April 28, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Regular 1022) registered under TX0009509700.

c. From at least April 28, 2025, and continuing to the present day, a literary work (written "README" concerning a firearm known as the Regular 1022) registered under TX0009509692.

d. From at least October 17, 2025, and continuing to the present day, sixty-three (63) photographic visual art works that depict a firearm known as the Hitchhiker, and which are registered under VA0002418589.

e. From at least October 17, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Hitchhiker) registered under TX0009412695.

242. Plaintiff did not authorize Defendants Wilson's copying, display, or distribution of Plaintiff's works.

243. As a result of his wrongful conduct, Defendant Wilson is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

244. Plaintiff is entitled to recover damages including any and all profits Defendant Wilson has made as a result of his wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

AS TO COUNTS 1 THROUGH 4: Defendant Wilson Willfully Infringed Plaintiff's Registered Copyrights

245.   Defendant Wilson and the Business Entity Defendants infringed the copyrights in Plaintiff's creative works by reproducing, distributing, and/or publicly displaying the works by and through various Defendant Wilson-owned-and-operated websites, blogs, and online stores without proper approval or authorization of Plaintiff.

246.   On March 1st, 2024, Defendant Wilson uploaded or caused to be uploaded "GunCAD: History and Value" to the Defense Distributed YouTube channel. https://www.youtube.com/watch?v=V7iuyS5WMEs ("the March 1st video"), wherein Defendant Wilson speaks at length.

247.   In the March 1st video, Defendant Wilson discusses his frustrations with individuals who have asked him to cease his unauthorized reproduction of their copyrighted works.

248.   In the March 1st video, Defendant Wilson states that "we resist copyright not just for historical reasons like, oh it's, you know, its origins are in censorship and, you know, it actually promoted piracy like, there are good libertarian stories, uh, for rejecting copyright specifically through—like Garrett mentioned about the First Amendment—copyright is an instrument of the modern capitalist state. Copyright is an excuse to assert and reduplicate, you know, new types of control, new types of subjugation under the law through agencies of United Nations like the world leaders property organization, uh, the World Trade Organization, you know, things like [unintelligible] all these things, and we're fighting that, okay?"

249.   On June 3rd, 2024, Defendant Wilson acknowledged on his blog it had been "5,568 hours since" Plaintiff requested the removal of copyrighted works from Defendants' websites.

250.   On or about October 17, 2024, Defendant Wilson updated or caused to be updated Defcad.com's terms of service. ("the October 17 update").

251.   The October 17 update included a prohibition against "Employees, agents, members and associates of the gun control organizations including" an entity owned in part by Plaintiff from accessing Defcad.

252.   The prohibition aims to prevent the Plaintiff from accessing Defcad.com, such that proving Defendant's infringement would be frustrated.

253.   The October 17 update threatens prosecution under the Computer Fraud and Abuse Act for "any access or use of any part of DEF, whether directly or indirectly, by or at the direction of, any of the above-listed persons".

254.   According to information and belief, the October 17 update was an attempt to frustrate Plaintiff's ability to plead and prove Defendant's infringements.

255.   In the face of a Motion for Preliminary Injunction, Defendant Wilson swore to cease infringing Plaintiff's photographic and written works until the conclusion of the First Action.

256.   Even so, Defendant Wilson willfully infringed the photographic and written works in the Second Hitchhiker Infringement, which were covered by the works Wilson swore to cease infringing in an attempt to moot the First Action's Motion for Preliminary Injunction.

257.    The cessation of one act of infringement, followed by the initiation of a new infringement of the same work leaves no doubt as to willfulness on the part of Defendant Wilson and the Business Entity Defendants.

258.    Defendant Wilson, knowing Plaintiff has not licensed the work to him, continues to represent to the public that at least some of Plaintiff's registered works are subject to a "public license".

259.    Defendant Wilson knows that no such license exists. Defendant Wilson proved this when he failed to provide any such license when he was prompted to so during discovery in the First Action.

260.    The Business Entity Defendants were, at all times material to this matter, functioning as alter egos for Defendant Wilson.

261.    Defendants knew the infringed works belonged to Plaintiff and that they did not have permission to exploit Plaintiff's works.

262.    Defendant Wilson wrote a manifesto detailing his contempt for copyright, and for Plaintiff's rights.

263.    Defendant Wilson acknowledged and mocked Plaintiff's federal copyright registrations on multiple occasions.

264.    The Business Entity Defendants, in concert with or controlled by Defendant Wilson, went so far as to delete copyright notices from some of Plaintiff's visual art works.

265.    Defendant Wilson knew his acts constituted copyright infringement.

266.    Defendant Wilson's conduct was willful within the meaning of the Copyright Act.

267.    As a result of his wrongful conduct, Defendant Wilson, and through him his corporate alter egos, are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

268.    Plaintiff is entitled to recover damages including any and all profits Defendants have made as a result of their wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

269.    Because Defendants' infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2).

270.    Plaintiff is eligible to recover his attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

COUNT 5: COPYRIGHT INFRINGEMENT AS TO DEFENDANT WALLIMAN

271.    Without authorization, Defendant Walliman, himself and through the Defcad.com website, reproduced and distributed, or caused to be reproduced and distributed, the following Plaintiff-owned and copyrighted works:

    a. From at least April 28, 2025, and continuing to the present day, twenty-three (23) photographic visual art works that depict a firearm known as the Regular 1022, and which are registered under VA0002449545, VA0002449526, and VA0002449520.

b.  From at least April 28, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Regular 1022) registered under TX0009509700.

c.  From at least April 28, 2025, and continuing to the present day, a literary work (written "README" concerning a firearm known as the Regular 1022) registered under TX0009509692.

d.  From at least October 17, 2025, and continuing to the present day, sixty-three (63) photographic visual art works that depict a firearm known as the Hitchhiker, and which are registered under VA0002418589.

e.  From at least October 17, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Hitchhiker) registered under TX0009412695.

272.  Plaintiff did not authorize Defendants Walliman' copying, display, or distribution of Plaintiff's works.

273.  As a result of his wrongful conduct, Defendant Walliman is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

274.  Plaintiff is entitled to recover damages including any and all profits Defendant Walliman has made as a result of his wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

AS TO COUNT 5: Defendant Walliman Willfully Infringed Plaintiff's Registered Copyrights

275.    Defendant Walliman and the Business Entity Defendants infringed the copyrights in Plaintiff's creative works by reproducing, distributing, and/or publicly displaying the works by and through various Defendant Wilson-owned-and-operated websites, blogs, and online stores without proper approval or authorization of Plaintiff.

276.    On June 3rd, 2024, Defendant Wilson acknowledged on his blog it had been "5,568 hours since" Plaintiff requested the removal of copyrighted works from Defendants' websites.

277.    On the June 3rd blog post, Defendant Wilson posted a screenshot showing that Defendant Walliman had been contacted by Plaintiff, asking Walliman to cease his infringement.

278.    Defendant Walliman was acutely aware of the copyrighted status of Plaintiff's works, as Defendant Walliman himself tracked their registration status through the Fedcad.com site.

279.    Defendant Walliman, who tracked the registered status of the works at issue, continued to curate and publish the works for download on Defcad.com.

280.    Defendant Walliman knew his acts constituted copyright infringement.

281.    Defendant Walliman's conduct was willful within the meaning of the Copyright Act.

282.    As a result of his wrongful conduct, Defendant Walliman is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has

suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

283.   Plaintiff is entitled to recover damages including any and all profits Defendant Walliman has made as a result of his wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

284.   Because Defendant Walliman's infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2).

285.   Plaintiff is eligible to recover his attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## COUNT 6: COPYRIGHT INFRINGEMENT AS TO DEFENDANT ODOM

286.   Without authorization, Defendant Odom, himself and through the Defcad.com website, reproduced and distributed, or caused to be reproduced and distributed, the following Plaintiff-owned and copyrighted works:

   a.   From at least April 28, 2025, and continuing to the present day, twenty-three (23) photographic visual art works that depict a firearm known as the Regular 1022, and which are registered under VA0002449545, VA0002449526, and VA0002449520.

   b.   From at least April 28, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Regular 1022) registered under TX0009509700.

c. From at least April 28, 2025, and continuing to the present day, a literary work (written "README" concerning a firearm known as the Regular 1022) registered under TX0009509692.

d. From at least October 17, 2025, and continuing to the present day, sixty-three (63) photographic visual art works that depict a firearm known as the Hitchhiker, and which are registered under VA0002418589.

e. From at least October 17, 2025, and continuing to the present day, a literary work (written documentation concerning a firearm known as the Hitchhiker) registered under TX0009412695.

287. Plaintiff did not authorize Defendants Odom's copying, display, or distribution of Plaintiff's works.

288. As a result of his wrongful conduct, Defendant Odom is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

289. Plaintiff is entitled to recover damages, including any and all profits Defendant Odom has made as a result of his wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

AS TO COUNT 6: Defendant Odom Willfully Infringed Plaintiff's Registered Copyrights

290. Defendant Odom and the Business Entity Defendants infringed the copyrights in Plaintiff's creative works by reproducing, distributing, and/or publicly

displaying the works by and through various Defendant Wilson-owned-and-operated websites, blogs, and online stores without proper approval or authorization of Plaintiff.

291.    Defendant Odom was acutely aware of the registered status of Plaintiff's works, both because Defendant Wilson told him about Plaintiff's claims, and because Odom saw the copyright notices when he curated and prepared the works for download on Defcad.com.

292.    Because part of his duties involve checking for copyright notices and notifying Defendant Wilson if he finds any, Odom either ignored the notices and published them anyway, or did in fact tell Wilson, and then proceed to publish them anyway.

293.    Odom has the ability to cease infringement and remove offending files from the Defcad.com website but never exercised it.

294.    Defendant Odom knew his acts constituted copyright infringement.

295.    Defendant Odom's conduct was willful within the meaning of the Copyright Act.

296.    As a result of his wrongful conduct, Defendant Odom is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his business reputation and goodwill.

297. Plaintiff is entitled to recover damages including any and all profits Defendant Odom has made as a result of his wrongful conduct. 17 U.S.C. §504, and in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c).

298. Because Defendant Odom's infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2).

299. Plaintiff is eligible to recover his attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELEIF**

300.   Plaintiff prays this Honorable Court grant the following relief:

a.   A preliminary and permanent injunction preventing Defendants' continued unauthorized copying, display, and distribution of Plaintiff's works;

b.   Award Plaintiff statutory damages for Defendants' infringements under 17 U.S.C. § 504(c);

c.   Enhance Plaintiff's damages award due to Defendants' willful conduct under 17 U.S.C. § 504(c)(2);

d.   Award Plaintiff his attorneys fees and costs under 17 U.S.C. § 505, or other relevant laws; and

e.   Award Plaintiff any other relief this Honorable Court deems just and proper.

DATED:  November 5, 2025

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
Zermay Law, P.A.
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Telephone: (305) 767-3529
Lead Counsel for Plaintiff Matthew Larosiere