UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:25-cv-2112-CEM-NWH

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, DD FOUNDATION LLC, THOMAS CHRISTOPHER ODOM, AND GARRET WALLIMAN,

*Defendants*.

_____/

**PLAINTIFF MATTHEW LAROSIERE'S MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW IN <u>SUPPORT THEREOF</u>**

Plaintiff Matthew Larosiere, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 65(a) and Local Rule 6.02, respectfully moves that this Honorable Court preliminarily enjoin and restrain Cody Rutledge Wilson, DEFCAD Inc., DEFENSE DISTRIBUTED, DD FOUNDATION LLC, Thomas Christopher Odom, and Garret Walliman, and their directors, principals, officers, agents, representatives, servants, attorneys, successors and assigns (collectively, "Defendants"), from:

1. Imitating, copying, reproducing, or making any other infringing use or infringing distribution of any of Plaintiff's copyrighted works including the photographs, visual art works, and literary works covered by the Certificate of Copyright Numbers VA0002449545, VA0002449526, VA0002449520,

1

TX0009509700, TX0009509692, VA0002418589, and TX0009412695 (collectively, the "Copyrighted Works")[1];

    2. Imitating, copying, reproducing, or making any other infringing use or infringing distribution of any other photographs, visual art works, and literary works created or owned by Plaintiff;

    3. Assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any item bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the Copyrighted Works;

    4. Using any false designation of origin, providing false descriptions of the qualities or characteristics, or using graphic images of any element of any of the Copyright Works, which can or is likely to lead the trade or public or individuals erroneously to believe that any product or service or work of Defendant has been assembled, produced, distributed, offered for distribution, circulated, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Plaintiff;

    5. Misrepresneting to the public and others that Defendants possess licenses or misrepresent the existence of licenses to sell or otherwise distribute Plaintiff's works;

---

[1] The specific works covered by these registrations are detailed in the Complaint in this action (Doc. 1, pp. 33-48).

6. Engaging in any other activity constituting an infringement of the Copyrighted Works.

7. Additionally, that this court enter an order that restrains Defendants' assets (or otherwise places them in escrow) so that Plaintiff's right to an equitable accounting of Defendants' profits from their infringing activity is not impaired.

In support of this motion, Plaintiff states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION AND SUMMARY OF ARGUMENTS

This motion concerns new infringements Plaintiff discovered less than 2 weeks ago. Unique to the need for injunctive relief in this case is that Plaintiff, the exclusive owner of the works at issue, does not want his works to be sold at all. This suit involves a set of Defendants that have, in the face of multiple requests and complaints, insisted on copying, distributing, and selling Plaintiff's works time and time again. Plaintiff Matthew Larosiere works and has worked providing expert services, legal services, design work, and has authored many articles and guides relating to multiple facets of the firearms industry. For years, Plaintiff has engaged in the design and development of firearms technologies, and produces pictorial, written, and visual art works related to his work. The need for a preliminary injunction is best contextualized against the timeline of events relevant to this action:

1. December 10, 2023: Plaintiff first discovered Defendants' infringements. Shortly thereafter, while preparing to bring suit in *Larosiere v. Wilson*, 6:24-cv-01629 (M.D. Fla.) (hereinafter "The First Action") Plaintiff registered his works with the copyright office. (Ex. E, ¶¶ 132-155).

2. Before May 24, 2024, Defendants, through Defendant Wilson, published a manifesto admitting to removing the copyright notices from Plaintiff's Copyrighted Works, and admitted that Plaintiff's works were copyrightable. (Compl. ¶ 264); (Ex. E ¶ 169-178). In addition to describing himself therein as a pirate, Defendant Wilson complained at length in his manifesto that individuals were asserting copyright against him. (Compl. ¶ 262); (Ex. E at ¶ 173).

3. Before August 2, 2024,[2] Defendants, though Defendant Wilson, knew that Plaintiff had begun filing registrations for his works. Because Defendants understood that these registrations were being filed so that the First Action could be brought against them, Defendant Wilson began attempting to frustrate Plaintiff's ability to recover. Wilson's attempts to frustrate went so far as using his companies to send a death threat to Plaintiff's personal friend in an attempt to coerce Plaintiff out of filing the First Action.

4. Additionall, on August 10, 2024, Defendant Wilson—a Texas resident with no privity to Plaintiff—filed a complaint with the Florida bar[3] (the "Bar Complaint"). The Bar Complaint, the allegations of which were

---

[2] That Defendants knew of the registration is evinced by Defendant Wilson's posting of the certificate of registration for one of Plaintiff's copyrighted works to his website on August 2, 2024. *Archived at*: https://web.archive.org/web/20241231074301/https://defcad.com/library/sf5-step-master-application-for-copyright-registration/
[3] *See* Ex. E ¶¶ 17-30.

centered around Plaintiff's enforcement of copyright, was designed to give Defendant Wilson an unfair advantage in a copyright suit he anticipated. The Florida Bar, after carefully reviewing Defendant Wilson's allegations, found that Plaintiff Larosiere did not engage in unethical conduct.

5. On September 6, 2024, Plaintiff filed The First Action.

6. On January 8, 2025, Plaintiff filed a motion for preliminary injunction in the First Action. (The First Action, Doc. 53).

7. On January 22, 2025, in an attempt to moot the January 8 motion, Wilson filed a declaration swearing to cease infringing Plaintiff's written and photographic works until The First Action concluded. (The First Action, Doc. 74-1 at 4).

8. On April 28, 2025, Defendants began infringing the photographic works registered under VA0002449545, VA0002449526, and VA0002449520; and the literary work registered under TX0009509700 and TX0009509692. (Compl. ¶¶ 159-169).

9. On September 15, 2025, the Motion for Preliminary Injunction in the First Action was denied because it was not timely sought. (The First Action, Doc. 132).

10. Shortly thereafter, on October 17, 2025, Defendants *again* began infringing the visual art works registered under VA0002418589, and the literary work registered under TX0009412695. (Compl. ¶¶ 177-194).

11. On October 31, 2025, Plaintiff learned of the new infringement because Defendants sent out an e-mail blast advertising the new infringements, and misrepresenting to the public that the works infringed on October 17, 2025, were subject to a "public license." (Compl. ¶¶ 199-203).

Two major factors contribute to the particular necessity of a preliminary injunction here: Defendants' continued conduct in intentionally infringing Plaintiff's copyrights, and the nature of that conduct. The fact that Defendants simply refuse to stop making *additional* infringements of Plaintiff's Copyrighted Works during the pendency of The First Action alone creates irreparable harm, as it has already necessitated multiple actions at law. Defendants' intentional infringements threaten to force Plaintiff to either abandon his rights or seek relief through a "multiplicity of actions necessary for redress at law" which are "sufficient, without reference to other considerations, to uphold the remedy by injunction." *Lee v. Bickell*, 292 U.S. 415 at 421 (1934).

## ARGUMENT

Rule 65(a) of the Federal Rules of Civil Procedure and § 502 of the Copyright Act give this Court specific authority to issue an injunction to prevent further infringement of Plaintiff's Copyrights. Fed. R. Civ. P. 65(a); 17 U.S.C. §502. Defendants, without authorization, copied Plaintiff's registered works of authorship and promoted, advertised, and sold the works over the internet, including into the Middle District of Florida. Good cause exists for the injunction, in part because "Injunctive relief [is] particularly appropriate in cases involving simple copying or

'piracy' of a copyrighted work." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *1 (M.D. Fla. Jan. 17, 2017) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001); *Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 578 n. 10 (1994)).

To prevail on this motion, Plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002). In considering a motion for preliminary injunctive relief, "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted).

### I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF THE COPYRIGHT INFRINGEMENT CLAIMS

Plaintiff must satisfy two requirements to establish direct copyright infringement; 1) he must show ownership of the allegedly infringed material; and (2) he must demonstrate that the alleged infringer violated at least one exclusive right granted to him as copyright holder, under 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a) (infringement occurs when the alleged infringer engages in an activity listed in § 106).

7

## A. PLAINTIFF OWNS THE INFRINGED MATERIAL

Copies of Plaintiff's certificates of registration are attached hereto as Exhibit A. These registrations serve as *prima facie* evidence of validity and ownership. 17 U.S.C. § 410(c). The Declaration of Matthew Larosiere is attached hereto as Exhibit D. (hereinafter "Larosiere Dec."). True and correct representations of the infringed works are attached hereto as exhibits B and C, each referencing the relevant registration number, confirmed by the Larosiere Declaration.

## B. DEFENDANTS COPIED PLAINTIFF'S COPYRIGHTED WORKS

Copying must be established by a preponderance of the evidence. *Herwitz v. National Broadcasting Co.*, 210 F. Supp. 231 (S.D. N.Y. 1962). Evidence of access and substantial similarity creates an inference of copying copyrighted work and establishes a *prima facie* case of copying. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir. 1982). Access need not be proven, though, where the similarities of the works are so striking and of such a nature as to preclude the possibility of coincidence, accident, or independent creation. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010).

Although evidence of access and copying prove problematic in some cases, such is not the case here: Defendants have admitted to copying Plaintiff's registered works on the Defcad.com website via their blogs and email blasts. (Compl. ¶¶143-148). Defendants have falsely claimed that the works relevant to the "Hitchhiker" are subject to some sort of unspecified "public license". This is a statement that Defendants know is false, because they correctly noted that these works are

8

"Copyrighted, All Rights Reserved" on the Defcad.com download page for these works. Additionally, Defendants are each aware of the contents of the "Fedcad.com" website, which was created by Wilson and/or Walliman to detail the status of copyright registrations for the works that were being infringed on Defcad.com. Despite each Defendant being aware of the status of copyright registrations for the works at issue, they all intentionally continued their infringement.

Even had Defendants not admitted to copying the works at issue, the works are identical, word-for-word (Larosiere Dec. ¶10(b); Exhibit C) and pixel-for-pixel (Larosiere Dec. ¶10(a); Exhibit B), which is beyond the striking similarity necessary to support a finding of copying. Additionally, Defendants necessarily admit to having access to Plaintiff's works through their email blasts and blog posts. These emails and posts unambiguously indicate that Defendants are copying Plaintiff's works via Defcad.com. As such, this Court can properly consider striking similarity "together with other types of circumstantial evidence relating to access", such as Defendants' open advertisement of both their copying and their access. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984).

### C. DEFENDANTS' COPYING WAS NOT AUTHORIZED

This element is easily satisfied. Defendant Wilson, who is the owner of all the business entity defendants, was served in the first action with a request for production seeking all licenses, contracts, assignments, or agreements that authorized him to copy the works purported to be protected by Plaintiff's certificates

of registration. Wilson, without objection, did not produce any licenses, contracts, assignments, or agreements.

In the First Action, Defendants asserted an affirmative defense of "license because the United States federal government…in 2018…granted Defense Distributed a federal license to publish the files in question without restriction." (Ex. F ¶ 315). Nowhere else can a license be inferred anywhere in the pleadings, and the owner of the works at issue declares that "Defendants do not have, nor have they ever had, the right or authority to use my Copyrighted Works for any purpose." (Larosiere Dec. ¶ 7).

Plaintiff cannot undertake to find any authority to suggest that the "United States federal government" can or ever has granted a private entity a license to ignore copyright, especially for works that have yet to exist. Even if this nebulous, uncited license existed, Defendants allege it to have been granted in 2018. The earliest work at issue in this litigation was registered in 2023.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM IF AN INJUNCTION DOES NOT ISSUE

Plaintiff will suffer irreparable harm if Defendants are not enjoined from further infringing his copyrights in and to the Copyrighted Works. The Eleventh Circuit, among other courts, have recognized a wide variety of harms in the copyright context to support a finding of irreparable harm, including:

- A multiplicity of actions at law being required to enforce a copyright. *Pacific & S. Co. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir.1984) (plaintiff entitled to an injunction when it can only enforce its copyrights through multiple infringement actions).

- An action where monetary damages are unsuitable as a remedy. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (Holding irreparable harm can be proven by evidence of an injury for which monetary damages are unsuitable to remedy, or harm that would necessitate a multiplicity of suits to remedy.).
- Harm to the copyright holder's reputation, goodwill, and brand. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991).
- Loss of the ability to control and enforce its copyrights. *MGM Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d. 1197, 1216-1218 (C.D. Cal. 2007) (irreparable harm caused by substantial likelihood of continued infringement erodes claimant's ability to enforce their exclusive rights).

Here, Defendants' continued pattern of infringement since the filing of the First Action have necessitated an amended complaint in that action, in addition to this second lawsuit because of the new infringements discovered on October 31. Additionally, money damages are insufficient, as Plaintiff has made clear he does *not* want his works of authorship sold at this time, something Defendants are acutely aware of and actively seek to frustrate. Under 17 U.S.C. § 106, Plaintiff has the "exclusive rights to do and authorize…to reproduce…distribute…[or] display" his works. Money damages do not sufficiently remedy the infringement, as they do not un-sell that which the author wanted not to be sold. *See, e.g.*, *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) (Defendant infringed Plaintiff church's copyright, where church gained no profit from the work, and did not want work reproduced).

Defendants are openly hostile to Plaintiff's copyrights and have acted aggressively to harass Plaintiff about them.[4] Defendants intentionally uploaded

---

[4] On May 24, 2024, Wilson wrote "The reason you don't sue is because you got the law wrong on copyright. That and because you're a huge pussy. Anyway, I wrote a paper

11

Plaintiff's works, advertising them as being subject to some unspecified "public license", to encourage third party infringement of Plaintiff's registered works. (Compl. note 3, ¶¶ 203-207) (Ex. E ¶ 250-259). Defendants mock Plaintiff's copyrights in a manifesto urging others to ignore copyright. (Compl. ¶¶261-263) (Ex. E ¶ 169-178).

Defendants' Defcad.com website asserts that any material uploaded to DEFCAD grants to DEFCAD "an irrevocable, perpetual, fully-paid, worldwide non-exclusive license to use, copy, perform, display and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing."[5] This misrepresents to third parties that Defcad has the right to derivate or sublicense Plaintiff's work. These misrepresentations threaten to cause these third parties who accesses an infringing copy of Plaintiff's works from Defendants to inadvertently engage in copyright infringement. Plaintiff has never uploaded any of his works to Defcad.com, nor any of Defendants' other websites. Plaintiff has never granted permission for Defendants, nor anyone else, to upload Plaintiff's work to Defcad.com, nor any of Defendants' other websites. Defendants are aware of these facts, but still willfully mislead the public to harm Plaintiff's copyrights.

---

to commemorate the great pirates who lit our way. They pillaged so we could plunder." https://ddlegio.com/memorial-day-weekend/
[5] https://defcad.com/terms/

Importantly, Defendants' erratic and oftentimes inexplicable behavior makes the perceived affiliation particularly damaging to Plaintiff's business goodwill. Defendant Wilson is infamous for having sexual relations with a child.[6] Defendant Wilson is also known for his support of hate groups, and his attempt to fund the same through his "Hatreon" project.[7] Defendants' websites promote Antelope Hill Publishing, which publishes books on "race realism" and other ideas Plaintiff—a person of color—does not want himself or his brand associated with.[8]

### III. THE BALANCE OF HARDSHIPS TIP SHARPLY IN PLAINTIFF'S FAVOR

The third factor likewise supports the grant of preliminary injunction. Defendants' additional infringements, which now form a pattern of behavior, make clear Defendants will invariably continue to violate Plaintiff's exclusive rights under §106, forcing Plaintiff to await new registrations for each published work, and file still more lawsuits or amended pleadings—delaying and frustrating the existing actions—for each new infringement. Defendants admit to profiting from the infringements, while Plaintiff faces the immediate and irreparable loss of his exclusive rights, and diminished reputation. By contrast, Defendants face no

---

[6] Autullo, Ryan "Cody Wilson pleads guilty in child sex case." Austin American-Statesman, Aug, 9, 2019 https://www.statesman.com/story/special/2019/08/09/3d-printer-gun-activist-cody-wilson-pleads-guilty-in-child-sex-case-avoids-prison/4496277007/.

[7] Carson, Erin "Here's where Nazi sympathizers go to raise money," CNET, Dec. 4, 2017, https://www.cnet.com/culture/neo-nazi-sympathizers-crowdfunding/.

[8] DefCad Blog, "The Nutty-9 and McMaster Blaster," July 31, 2024, https://defcad.com/blog/nutty-9-mcmaster-blaster/.

hardship from an injunction prohibiting their unlawful activities. *See Chanel, Inc. v. be-sumart.com*, 240 F. Supp. 3d 1283, 1290-91 (S.D. Fla. 2016).

### IV. THE RELIEF SOUGHT SERVES THE PUBLIC INTEREST

The public interest would be served by the issuance of a preliminary injunction. The ultimate aim of copyright is "to stimulate artistic creativity." *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975). Here, this goal is served by the grant of the injunction because it protects the interests of those who create original material, including visual and written works. Furthermore, the grant of injunction protects the public from unwittingly committing copyright infringement as a result of Defendants' conduct discussed *supra* part II. It certainly favors the public that Defendants' infringements be stopped, such that the public not mistakenly rely on Defendants' representations that Defendants have the ability to grant sublicenses to the works here at issue, or that "public licenses" exist when they do not.

### V. NO BOND IS REQUIRED

Plaintiff respectfully requests that no bond be required as a condition of the preliminary injunction because Defendants' violation of Plaintiff's copyrights in and to the Copyrighted Works is so clear.

### VI. THE EQUITABLE RELIEF SOUGHT SHOULD ISSUE

Plaintiff respectfully requests an order that directs (on a preliminary basis) Defendants and their agents, servants, employees, affiliated entities, and all of those in active concert with them to immediately cease the reproduction, distribution, advertisement, sale, and other infringements of Plaintiff's Copyrighted Works and

14

any works derived therefrom, and to desist from all such infringing conduct until a permanent injunction is entered in this case. This remedy is specifically provided for in the Copyright Act, which empowers this Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

Further, Plaintiff requests an order that restrains Defendants' assets (or otherwise places them in escrow) so that Plaintiff's right to an equitable accounting of Defendants' profits from unlawful use of Plaintiff's Copyrighted Works are not impaired. Sections 504(c) and 505 of the Copyright Act provide for statutory damages between $750 and $30,000, enhanced damages for willful infringement and an award of attorneys' fees and costs. 17 U.S.C. §§ 504(c), 505. If Defendants are allowed to move or hide assets, as Defendants are known to do,[9] it will frustrate Plaintiff's ability to fully enforce his copyrights in and to the Copyrighted Works. Such restraint can be granted pursuant to Federal Rules of Civil Procedure 64 and 65 and pursuant to this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide equitable relief. Fed. R. Civ. P. 64 and 65; *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets); *Reebok Int'l v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd sub nom. Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992). In *Reebok*, the district court granted the plaintiff a limited

---

[9] *See* (Compl. ¶¶ 15-23); *see also* "Cody Wilson is on the Lam With $1 Million in Bitcoin," SPLC Blog, Sept. 20, 2018, https://www.splcenter.org/hatewatch/2018/09/20/cody-wilson-lam-1-million-bitcoin.

restraint of the defendants' assets for the purpose of preserving them, thus ensuring the availability of a meaningful accounting after trial. Accordingly, Plaintiff respectfully requests this honorable Court order Defendants and the operators of Defendants' accounts to prevent the transfer of Defendants' assets and freeze Defendants' accounts until further order of this Court.

## VII. CONCLUSION

The Court should enter a preliminary injunction against Defendants' copyright-infringing conduct.

DATED: November 12, 2025

                                        /s/ Zachary Z. Zermay
                                      Zachary Z. Zermay, Esq.
                                      Fla. Bar № 1002905
                                      *Zermay Law, P.A.*
                                      3000 Coral Way Ste 1115
                                      Coral Gables, FL 33145
                                      Email: zach@zermaylaw.com
                                      Telephone: (305) 767-3529
                                      *Lead Counsel for Plaintiff Matthew Larosiere*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 12, 2025, I caused a true and correct copy of the foregoing motion for preliminary injunction to be served upon each Defendant under Rule 5(b)(2)(C) by mailing it to each Defendant's last known address, specifically:

Cody Rutledge Wilson
2320 Donley Dr. Ste C,
Austin, TX 78758

Defense Distributed
2320 Donley Dr. Ste C,
Austin, TX 78758

Thomas Cristopher Odom
397 Gaitan Ln,
Kingsbury TX 78638

Defcad, Inc.
2320 Donley Dr. Ste C,
Austin, TX 78758

DD Foundation LLC
5900 Balcones Drive Ste 100
Austin, TX 79731

Garret Walliman
949 S Bowman Rd,
Apache Junction, AZ 85119

*/s/ Zachary Z. Zermay*