United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,
    Plaintiff,

v.                                                        No. 6:25-cv-2112

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, DD Foundation LLC,
Thomas Christopher Odom, and Garret
Walliman,
    Defendants.

## Defendants' Response to
## Plaintiff's Motion for a Preliminary Injunction

Defendants file this joint response to the Plaintiff's Document 8 motion for a preliminary injunction. The motion should be denied for all of the following reasons.

### Argument

Plaintiff's motion should be denied for multiple independent reasons, any one of which is sufficient.

First, the motion is moot. It seeks to enjoin publication of specific works that are no longer being distributed. Defendants have adopted and implemented an absolute, litigation-long policy—effective December 15, 2025—prohibiting distribution via DEFCAD (or other intentional use) of the identified documents and photographs for the duration of this case, including any appeals. With no ongoing conduct to restrain and no concrete likelihood of recurrence on this record, there is no live Article III controversy for Rule 65 to address.

1

Second and third, the motion is procedurally defective. Plaintiff is already litigating the same dispute against the same core defendants in the pending 2024 action. The Eleventh Circuit's claim-splitting doctrine bars this parallel suit, which repackages the same nucleus of operative facts and re-seeks the kind of interim relief previously denied. And this case belongs in Texas, not Florida: Plaintiff has not carried his burden to establish personal jurisdiction over these out-of-state defendants or to show proper venue in this District. A court should not issue equitable relief where jurisdiction, venue, and claim-splitting present substantial obstacles to the action itself.

Finally, Plaintiff cannot satisfy the traditional injunction test in several key respects. But because the first two arguments alone justify denying the motion, the Court need not wade into any of that. The motion should be denied and everything else addressed when Defendants move for relief under Rule 12 in due course.

**I.    The motion should be denied as moot.**

The motion should be denied as moot because it seeks to enjoin conduct that is no longer occurring. Plaintiff places at issue two textual documents—TX0009509700 (the "1022 Build Guide") and TX0009509692 (the "1022 Readme")—and three sets of photographs—VA0002449545, VA0002449526, and VA0002449520. Doc. 8 at 1. But as of today, there is no ongoing conduct on those fronts for Rule 65 to restrain.

As set forth in the Declaration submitted as Exhibit C, Defense Distributed and Defcad, Inc. have adopted and implemented a formal policy, effective December 15, 2025, under which they will not distribute via DEFCAD—or otherwise intentionally utilize—the textual documents and photographs identified in Plaintiff's motion for the

duration of this litigation, including any appeals. Ex. C at 3. That policy is absolute and unconditional, was adopted after substantial deliberation, and is expressly not an admission of liability. *Id.* It has been implemented through internal operational instructions and platform-level controls, enforced by personnel responsible for DEFCAD content administration, and contains no discretionary exceptions, waivers, or informal workarounds. *Id.*

Article III limits federal courts to live controversies. Where challenged conduct has ceased and there is no real and immediate threat of recurrence, a request for prospective injunctive relief is moot. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). On this record, Defendants' cessation removes the only conduct Plaintiff asks the Court to enjoin.

Nor does this record support application of the voluntary-cessation exception. The relevant question is whether it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189. Exhibit C answers that question. Defendants have adopted a litigation-long policy barring distribution of the identified works, implemented through mandatory platform controls and enforced without exception. Ex. C at 3, ¶¶ 6–9. Plaintiff offers no competent evidence suggesting a concrete likelihood of recurrence, and speculation is insufficient to preserve a claim for prospective relief, *see, e.g.*, *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004).

Because there is no ongoing publication of the works at issue and no realistic prospect of recurrence during the pendency of this case, the motion seeks relief against completed conduct only. It is therefore moot and should be denied.

## II. The motion should be denied due to impermissible claim splitting.

This action and its preliminary-injunction motion are barred by the Eleventh Circuit's claim-splitting doctrine. Plaintiff is already litigating the same dispute against the same defendants in the pending 2024 action, *Larosiere v. Wilson*, No. 6:24-cv-01629 (M.D. Fla.); *see* Ex. A (the complaint). He may not maintain a parallel case to relitigate the same issues or to seek interim relief that was already denied there.

Claim-splitting is a mandatory doctrine requiring a plaintiff to bring all claims arising from a common set of facts in a single action and prohibiting a second suit while the first remains pending. *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 840-42 (11th Cir. 2017). The test asks whether the actions (1) involve the same parties (or their privies) and (2) arise from the same transaction or series of transactions, meaning that they are "based on the same nucleus of operative facts." *Id.* at 841–42. Both requirements are plainly met here.

The first prong of parallel parties is satisfied because the parties are essentially identical. *Compare* Doc. 1, *with* Ex. A (the 2024 case's live complaint). Plaintiff is the same, and the core defendants are the same, save for one new defendant in the new action. *Id.* That amount of commonality satisfies the first prong. *See, e.g., id.*

The second prong is also satisfied. This case arises from the same nucleus of operative facts as the 2024 action: the same asserted copyrights, the same alleged

4

infringement scheme, the same websites and distribution mechanisms, and the same alleged injuries. Compare Ex. A, with Doc. 1. Plaintiff effectively concedes the point, characterizing this case as involving only "additional infringements of Plaintiff's Copyrighted Works" already at issue in the 2024 case. Doc. 8 at 6.

The overlap is most obvious with respect to the work Plaintiff calls "the Hitchhiker," which dominates both pleadings. The 2024 complaint repeatedly litigates that work, Ex. A, and Plaintiff again sues and seeks preliminary relief over it here. Doc. 1; Doc. 8 at 8; id. at 2 n.1. The new complaint even admits that the "photographic and written works in the Second Hitchhiker Infringement" are "covered by the works" sued upon in the first case. Doc. 1 at 40. Plaintiff's non-Hitchhiker allegations do not change the analysis; the new complaint frames them as further instances of the same alleged course of conduct on the same platform, through the same publication tools, under the same asserted rights. "Stated differently, the factual bases for both lawsuits are related in time, origin, and motivation, and they form a convenient trial unit, thereby precluding [Plaintiff] from splitting [his] claims among the lawsuits." *Vanover*, 857 F.3d at 852-43,

Plaintiff also cannot evade claim-splitting by pointing to later-occurring acts or even by adding additional causes of action. *See id.* ("claim-splitting is not defeated by [Plaintiff's] addition of causes of action").  When later events are part of the same alleged pattern, the proper course—if any—is to seek leave to supplement or amend in the first action, not to file a second suit and re-seek extraordinary relief. *See, e.g., id.* Though Plaintiff may have had no entitlement to have later allegations accepted in the

5

2024 case, he was most certainly required to try—through Rule 15(d), amendment, or a renewed injunction request on an expanded record. *See id.* "To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Id.*

Nor does it matter that the first action has not reached final judgment. The question is whether the first suit, assuming it were final, would preclude the second. *See, e.g.*, *Vanover*, 857 F.3d at 841. That is precisely why the doctrine exists: to prevent serial injunction practice over the same dispute.

Plaintiff sought a preliminary injunction in the 2024 action and the Court denied it. Ex. B. He now asks this Court to issue the same kind of injunction in a duplicative suit. Claim-splitting bars that end-run. *See, e.g., Vanover*, 857 F.3d.

*Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221 (11th Cir. 2021), rightly applies *Vanover*'s test and independently confirms that this action cannot proceed. Even when a new action involves substantial new factual allegations, the rule against claim-splitting applies so long as the underlying "cause of action was essentially the same." *Id.* at 1236. This Court should follow *Kennedy* and enforce the claim-splitting bar rather than permit serial injunction practice over the same operative facts.

When the time comes, the Court should conclude that dismissal—not consolidation—is the appropriate response to the claim-splitting defect identified here. Claim splitting is not a case-management concern governed by Rule 42(a); it is a threshold doctrine that bars maintaining a second, parallel action while the first

remains pending. The doctrine operates to prevent duplicative litigation altogether, not merely to administratively combine it.

But the Court need not—and should not—resolve the ultimate disposition at this stage, before the issue is fully vetted on a Rule 12 record. For present purposes, it is enough to recognize that these foundational procedural defects independently and decisively warrant denial of Plaintiff's request for preliminary injunctive relief.

### III.  The motion fails because the case does not belong in Florida.

#### A.  Personal jurisdiction is lacking.

The motion should also be denied because Plaintiff has not established personal jurisdiction over Defendants. A court lacking authority over the parties should not issue coercive equitable relief, and Plaintiff bears the burden of establishing jurisdiction now. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). He has not done so.

Federal copyright suits must satisfy both the forum state's long-arm statute and constitutional due process standards, which require state-specific forum-directed conduct giving rise to the claims. *See, e.g.*, *World Media All. Label, Inc. v. Believe SAS*, No. 24-12079, 2025 WL 2102017, at *2 (11th Cir. July 28, 2025). General jurisdiction is unavailable absent contacts so continuous and systematic as to render a defendant "at home" in Florida, *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014), which Plaintiff does not and cannot allege.

Specific personal jurisdiction exists only if the action arises out of conduct that constitutes a defendant's purposeful availment of the State of Florida itself. *E.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014). But Plaintiff has not and cannot show that

7

here. Defendants are based outside Florida, the alleged infringing conduct occurred elsewhere, and the mere accessibility of websites in Florida—or the fact that Plaintiff felt effects there—does not establish purposeful availment. *See id.* Plaintiff's effort to establish Florida's specific personal jurisdiction over these Defendants violates two key rules upheld by the Supreme Court in *Walden*.

First, *Walden* makes specific jurisdiction over the Defendants impossible to sustain here by reaffirming a longstanding rule about whose contacts matter: Contacts count towards purposeful availment only if they are created by the "defendant himself"—not if they are created by "plaintiffs or third parties." *Walden*, 571 U.S. at 284. The fact that Floridians chose to reach out to a Texas company is, under *Walden*, not enough.

Second, *Walden* makes specific jurisdiction impossible to sustain here by holding that "'minimum contacts' analysis looks to the defendant's contacts with *the forum State itself*, not the defendant's contacts with *persons who reside there*." *Walden*, 571 U.S. at 285. Whatever relationship Defendants created here is with Florida residents themselves—not their state. Under *Walden*, the critical jurisdictional question is about "whether the defendant's actions connect him to the forum." *Id.* For everything that Plaintiff sues the Defendants for, the answer is "no."

At bottom, the complaint's case for specific personal jurisdiction over Defendants rests on little more than the business's maintenance of a website passively offering products to the entire world that happens to also broadcast into Florida. That does not suffice because "'merely post[ing] a passive website' does not constitute either the solicitation of

8

business in Florida or the transaction of business in Florida, for purposes of a jurisdictional due process analysis." *Westwind Limousine, Inc. v. Shorter*, 932 So. 2d 571, 575 (Fla. Dist. Ct. App. 2006) (quoting *Miller v. Berman*, 289 F.Supp.2d 1327, 1334–35 (M.D. Fla.2003)), and likewise because "[e]lectronic communications from out-of-state offices into Florida do not establish conducting business in Florida." *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 556 (Fla. Dist. Ct. App. 2017).  Everything the complaint really focuses on happened away from Florida, lacking any of the "purposeful direction" to this forum that precedent requires.  *See World Media All. Label, Inc. v. Believe SAS*, No. 24-12079, 2025 WL 2102017, at *2 (11th Cir. July 28, 2025).

      For these reasons, Plaintiff fails to establish that any Defendant's relationship with Florida crosses the threshold necessary to warrant an exercise of specific jurisdiction here. With general jurisdiction in Florida clearly lacking as well, no injunction can issue.

      **B.**    **Venue is lacking.**

      Venue also fails. Under 28 U.S.C. § 1391(b)(2)—the complaint's only cited provision, Doc. 1 at 19—venue lies where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).  But no substantial part of the alleged conduct occurred here. Doc. 1 at 3-16. The operative events—creation, hosting, and distribution decisions—took place in Texas, where the prime Defendants allegedly did everything at issue. *Id.*  Nor does the "property that is the subject of the action" anchor

9

venue in Florida, for on Plaintiff's own theory, the works exist digitally and were created, hosted, and controlled outside this District.

When venue is improper, the Court must dismiss or transfer the case. 28 U.S.C. § 1406(a). Sooner or later, the proper remedy here will be to either dismiss or transfer the case to the United States District Court for the Western District of Texas. At a minimum, the venue defect counsels strongly against issuing equitable relief.

### C. Mere jurisdictional uncertainty is enough to warrant denial.

Even if personal jurisdiction and venue were merely disputed—which they are not—that uncertainty alone precludes a preliminary injunction. Courts should not issue coercive equitable relief while threshold questions of jurisdiction and venue remain unresolved. *See Celgard, LLC v. LG Chem, Ltd.,* 624 Fed. Appx. 748, 751 (Fed. Cir. 2015). Yet Plaintiff asks this Court to regulate the nationwide conduct of Texas defendants from a forum that lacks authority over them. Because personal jurisdiction is lacking and venue is improper, the motion should be denied without regard to the merits.

### IV. The motion fails to meet the standard preliminary injunction test.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC,* 555 U.S. 7, 20 (2008). The motion does not meet this test because all key elements are missing.

### A.  No irreparable harm is established.

Irreparable harm is the *sine qua non* of preliminary injunctive relief. It must be likely, not speculative, and incapable of remediation through monetary damages—and it is never presumed. *See Winter v. NRDC*, 555 U.S. 7, 20–22 (2008); *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016). The Court denied Plaintiff's injunction request in the 2024 action in part for failing to make this showing, Ex. B at 3–6 ("Because Plaintiff has not shown that irreparable injury is likely to occur absent the issuance of a preliminary injunction, this Court need not address the remaining factors."), and the same deficiency is present here.

There is no presumption of irreparable harm in copyright cases. Any prior presumptions were rejected by *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and *Winter*, and the Eleventh Circuit has applied those holdings to Copyright Act claims, *see Campbell v. Bennett*, 47 F.4th 1362, 1368 (11th Cir. 2022); *Hoop Culture*, 648 F. App'x at 984–85 & n.2. A plaintiff must therefore affirmatively prove likely irreparable harm with competent evidence. Conjecture does not suffice. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990). Plaintiff cannot do so for several independent reasons.

First, there is no ongoing conduct. Defendants have ceased publishing the works at issue, eliminating any imminent injury an injunction could prevent.

Second, Plaintiff's asserted injuries—reputational harm, loss of goodwill, and associative damage—are wholly speculative and unsupported by evidence of concrete loss. His declaration, Doc. 8-4, offers no concrete evidence of lost business, lost

11

licensing opportunities, diminished market value, or any other measurable harm traceable to Defendants' conduct. Courts in this Circuit routinely reject such abstract theories. *See, e.g., Castellano Cosmetic Surgery Ctr., P.A. v. Rashae Doyle, P.A.*, No. 8:21-cv-1088, 2021 WL 3188432, at *9 (M.D. Fla. July 28, 2021).

Third, Plaintiff does not even attempt to show that any alleged harm is *exclusive* to Defendants' conduct. His declaration does not address whether the same or substantially similar materials remain available from other sources, whether the alleged injury would persist regardless of this litigation, or whether removing Defendants' publications would materially change his position. A failure to connect the requested injunction to the prevention of concrete, defendant-specific harm defeats irreparable injury.

In this vein, Plaintiff also fails to show that the alleged injury depends on Defendants as the source. The Document 8-4 declaration does not address whether the same or substantially similar materials remain available elsewhere, whether mirrors exist, or whether any alleged injury would persist regardless of an order here. Where a plaintiff cannot show the injunction will meaningfully abate the harm, irreparable injury is not established.

Fourth, delay independently defeats any claim of irreparable harm. Plaintiff knew of the alleged conduct long ago and previously litigated similar claims without obtaining injunctive relief. Delay "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Emergency relief is incompatible with serial litigation.

12

Finally, Plaintiff fails to show that legal remedies are inadequate. Defendants have stopped the challenged publication, leaving—at most—a retrospective dispute about past conduct and damages. That is the domain of ordinary merits litigation, not Rule 65. Speculation about future injury cannot justify extraordinary relief. *See Murthy v. Missouri*, 144 S. Ct. 7, 9 (2023). The motion can be denied on this ground alone.

**B.     The claims are meritless.**

Plaintiffs seeking a preliminary injunction must show a "substantial likelihood of success on the merits." *E.g.*, *Middlebrooks v. Dist. Attorney of Floyd Cnty., Georgia*, No. 24-11498, 2025 WL 227587, at *1 (11th Cir. Jan. 17, 2025). But Plaintiff's Document 8-4 declaration largely substitutes conclusions for proof. Its key assertions are conclusory points that do not establish chain of title, authorship, or the scope of any alleged permissions—particularly where the documents themselves reflect collaboration and contain licensing language. Rule 65 does not permit contempt-backed relief on conclusory affidavits where core facts are genuinely disputed.

First, Plaintiff has not carried his burden to prove ownership of the particular works at issue. The Build Guide and Readme reflect multiple contributors, and the photo sets likewise involve multiple authors, including individuals identified as "YZY" and "Internetpizza," in addition to John Elik. Those contributors have acknowledged that their work derives from earlier material dating to 2020. Plaintiff responds with the conclusory assertion that he is the "exclusive owner" of the works and that any non-self-created materials were assigned to him "by written agreement." Doc. 8-4 ¶¶ 5, 8. But he does not attach, authenticate, or meaningfully describe any

13

such written assignment (parties, dates, covered works, scope of rights conveyed). Conclusory ownership statements are not a substitute for the documents the Copyright Act requires—especially where the works themselves reflect collaboration and derivative history. At minimum, these core chain-of-title disputes require discovery and an evidentiary hearing, not contempt-backed relief on declarations.

Even if Plaintiff's registrations are taken at face value, they do not resolve the disputed facts that matter here—authorship, co-authorship, derivative status, and transfers. Registration is not a substitute for competent proof of a clean chain of title when the works reflect multiple contributors and Plaintiff claims assignments he does not produce.

Second, Plaintiff's "no license—ever" theory is overbroad and self-serving on this record. He declares that Defendants never had "right or authority" to use the works "for any purpose" and that he "never" granted "permission, license, [or] authorization." Doc. 8-4 ¶¶ 7, 14. Those are legal conclusions, not a tailored showing that addresses the actual circumstances Plaintiff invokes—materials posted and obtained through Defcad.com's "Download Docs" functionality and under posted terms. More importantly, the Readme and Build Guide themselves contain the operative license language governing use and redistribution. Where licensing is disputed on the face of the very documents at issue, Plaintiff cannot show a clear entitlement to relief on a preliminary-injunction record.

Plaintiff says non-self-created materials were assigned 'by written agreement,' but he attaches none. That omission is dispositive at the preliminary-injunction stage:

14

the Court should not issue extraordinary relief when Plaintiff claims decisive documents exist yet declines to provide them. At most, Plaintiff identifies issues for discovery—not grounds for an injunction now.

### C. The balance of equities favors Defendants.

The motion should also be denied because equitable considerations oppose the requested relief. The Eleventh Circuit's Copyright Act jurisprudence has long recognized that equitable rules like unclean hands should operate to deny special prospective relief (e.g., an injunction) irrespective of whether or not those same doctrines would apply with full force to deny normal retrospective relief in a final judgment. *See Peter Letterese And Associates, Inc. v. World Inst. Of Scientology Enterprises*, 533 F.3d 1287, 1323 (11th Cir. 2008). Two equities loom large here.

First, delay weighs heavily against Larosiere. The Court rejected the 2024 case's preliminary injunction request in part because of Plaintiff having delayed the request several months, Ex. B at 4-5, and that same analysis applies here. Once again Plaintiff seeks sweeping relief after allowing the alleged conduct to persist, after litigating related claims elsewhere, and after Defendants ceased the challenged distribution. Equity requires more diligence than that. *See Wicked Grips LLC v. Badaan*, No. 8:21-CV-2131, 2021 WL 4710488, at *5 (M.D. Fla. Oct. 8, 2021) (ten-month delay blocks relief); *Study Edge, LLC v. Skoolers Tutoring Ctr.*, No. 17-cv-76, 2017 WL 6994563, at *5 (N.D. Fla. Dec. 8, 2017) (seven-month delay blocks relief). Plaintiff's own timing confirms that ordinary merits litigation—not emergency relief—is the appropriate vehicle for any dispute over past publication.

Second, the balance of equities disfavors extraordinary relief because Plaintiff comes to equity under a cloud of unresolved spoliation concerns. In the 2024 action, Defendants made a substantial, record-supported showing that Plaintiff and his agents failed to preserve—and in fact deleted—electronically stored information bearing directly on authorship, development, publication, and ownership of the works Plaintiff seeks to protect here. That showing was supported by sworn forensic declarations and evidence of large-scale deletions occurring after preservation duties had attached.

Those issues remain unresolved. They are the subject of pending Rule 37 proceedings, including requests for adverse inferences and appointment of a special master. Plaintiff has not obtained a ruling clearing his conduct. Nor has he cured the evidentiary gaps created by the alleged deletions.

The same concerns apply with equal force here. This case arises from the same nucleus of operative facts and concerns the same asserted works. The allegedly spoliated materials relate to the same development, collaboration, and publication history on which Plaintiff relies to justify injunctive relief. Plaintiff cannot plausibly cabin those issues to the 2024 action while seeking extraordinary equitable protection based on the same factual predicate.

Courts sitting in equity may consider a movant's litigation conduct when weighing whether injunctive relief is appropriate. A preliminary injunction is not a matter of right. It presupposes fair dealing with the judicial process. Where serious, unrebutted questions persist about whether a plaintiff destroyed or failed to preserve relevant evidence, equity counsels restraint.

## V.    Alternative Arguments.

### A.    The motion makes no case against the secondary defendants.

Alternatively, even if Plaintiff could satisfy the preliminary-injunction elements in the abstract, the Court should deny relief as to the individual and affiliated defendants because the motion makes no defendant-specific showing against them. The motion targets the conduct of the DEFCAD/Defense Distributed entities. It does not offer evidence that Wilson, Odom, or Walliman personally published the works, directed any publication decision, or otherwise committed any actionable act. *Contra* Ex. C at 2. Nor does Plaintiff develop any veil-piercing or alter-ego theory in the injunction papers that could justify extending entity-level relief to individuals. *Id.* Absent a defendant-by-defendant evidentiary showing, the Court should deny any injunction as to all defendants that Plaintiff's proof does not specifically address.

### B.    Lack of specificity.

Plaintiff's requested relief fails Rule 65(d) for lack of specificity. Any injunction must "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The motion is best read to seek relief only as to the particular enumerated works—the two documents and three photo sets addressed above. But the motion does not consistently say that. It repeatedly uses language that can fairly be read to go much further, and to that extent it is invalid.

Page one illustrates the problem. It asks for relief vis-a-vis "any of Plaintiff's copyrighted works," "including" the works "covered by" the listed registrations. Doc. 8 at 1–2 (emphasis added). Read naturally, "any" is not limited to the five item sets,

and "including" is illustrative, not limiting. That phrasing invites a contempt-backed order untethered to the specific items actually litigated on this record.

Page two commits the foul again, seeking relief vis-a-vis "any other photographs, visual art works, and literary works created or owned by Plaintiff." Doc. 8 at 2. That language is not tethered to the five item sets specifically identified in the motion, to any particular registration, or to any concrete act of publication. It again purports to sweep in Plaintiff's entire body of work. Another example is that page's list number 5, which seeks relief vis-à-vis "Plaintiff's works" without limit. *Id.*

Rule 65 does not permit an injunction leaving the parties—and the Court—guessing about what content is covered and what conduct would trigger contempt. Any injunction must be strictly cabined to the specific works and conduct actually at issue, and the motion should be denied to the extent it seeks anything broader.

Last but not least, the motion's request for an order restraining Defendants' assets, Doc. 8 at 3, should be denied because no evidence shows any risk of asset dissipation or evasion. *See Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520, 1526 (11th Cir. 1994). On the contrary, evidence shows that both Defcad, Inc. and Defense Distributed are fully solvent business organizations that possess substantial assets and have an established history of meeting financial obligations. Ex. C at 2.

## VI. The response is timely.

This response is timely and does not require leave of Court. Defendants became parties to this action on December 1, 2025, when Plaintiff filed executed waivers of service. *See* Fed. R. Civ. P. 4(d)(4); Docs. 17–22. Under Local Rule 3.01(b), a party has fourteen days after service to file a response to a motion. Defendants filed this response within fourteen days of December 1. It is therefore timely as a matter of rule.

Plaintiff's prior mailing of the motion on November 12 does not alter that conclusion. As Plaintiff acknowledges, he purported to serve the motion by mailing it directly to Defendants under Rule 5(b)(2)(C). Doc. 8 at 17. But Rule 5 applies only to parties, and service under Rule 5 cannot precede service (or waiver) under Rule 4. *See* Fed. R. Civ. P. 4(d)(4) ("When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver."). Rule 5 service *before someone attains "party" status* via Rule 4 is a non sequitur. Until December 1, Defendants were not parties. So no Rule 5 service triggering a response deadline could occur before then.

The Middle District has recognized this sequencing: Rule 5 presupposes party status, which is governed by Rule 4. *See, e.g.*, *Intelsat Corp. v. Multivision TV LLC*, 736 F. Supp. 2d 1334, 1341 (S.D. Fla. 2010). Consistent with Rules 4(d)(4) and 5(a)(1), the complaint—and any motion purportedly served the same way—are deemed served on December 1. Hence the provision of Rule 4(d)(4) saying that, Fed. R. Civ. P. 4(d)(4). Measured from that date, this response is timely under Local Rule 3.01(b).

Plaintiff disagrees and posits that Defendants need leave to file a response now. His counsel also says that, if Defendants sought leave to file an opposition out of time, Plaintiff would not take a position on that requested relief.

Thus, in the alternative, to the extent that leave is required, Defendants respectfully move for leave to file this response out of time because of the circumstances described above constitute good cause. Any delay was minimal, caused by no fault of Defendants, and resulted in no prejudice to Plaintiff. Defendants acted promptly upon becoming parties to the action, and Plaintiff has suffered no impairment of its ability to litigate the motion on the merits. Good cause therefore exists under Fed. R. Civ. P. 6(b)(1)(B), and leave should be granted if required.

## Conclusion

The motion should be denied.

Respectfully submitted,

/s/ Chad Flores

Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

Counsel for Defendants